IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| <u>JACUB C. FOLEY</u>, a minor, by <br> <u>KATIE A. CABRAL</u>, his parent and <br> natural guardian, <br><br>     Plaintiffs, <br><br>     vs. <br><br> <u>WESTMORELAND REGIONAL HOSPITAL</u>, <br> a corporation, and <u>EXCELA HEALTH</u>, a <br> corporation, doing business as Excela <br> Health Westmoreland Hospital, <br> <u>WESTMORELAND OBSTETRICS AND</u> <br> <u>GYNECOLOGY, INC.</u>, a corporation, and <br> <u>TRACY J. GEMMELL, M.D.</u>, <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL DIVISION <br><br> NO.: |

AND NOW, come the plaintiffs JACUB C. FOLEY, a minor by KATIE A. CABRAL, through their attorneys JOHN A. CAPUTO and ELIZABETH L. JENKINS and complain upon causes of action whereof the following is a statement:

1)    Plaintiff JACUB C. FOLEY, a minor who sues by and resides with plaintiff KATIE A. CABRAL who is his mother and natural guardian, at 28H Seafarer Lane, Bath, Maine 04530.

2)    This Honorable Court has jurisdiction of the subject matter of this controversy pursuant to Title 28, Section 1332 of the :United Sates Code based on diversity of citizenship of the parties whereas the plaintiffs are currently residing in the State of Maine and the defendants are corporations who are existing under the law of Pennsylvania and an individual who resides in

Pennsylvania and maintain offices in Pennsylvania as is hereinafter set forth; and the amount in controversy exceeds the jurisdictional threshold limit of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS exclusive of interest and costs.

3)      Defendant WESTMORELAND REGIONAL HOSPITAL, hereinafter defendant "WRH", is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and, at all times material hereto, conducted business as Excela Health Westmoreland Hospital, and maintains an office located at 532 W. Pittsburgh Street, Greensburg, Westmoreland County, Pennsylvania 15601, and at all times material hereto, held itself out to the public as being able to provide competent, adequate and timely care to a pregnant woman and her fetus.

4)      At all times material to this cause of action, defendant WRH was acting by and through its duly authorized agents, servants, employees and ostensible agents who were acting within the course and scope of their employment, on the business of said defendant, and under its direct control and supervision, including but not limited to nurses whose involvement in plaintiff's and decedent's care is described herein.

5)      Defendant EXCELA HEALTH, hereinafter defendant "EXCELA", is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and, at all times material hereto, conducted business as Excela Health Westmoreland Hospital, and maintains an office located at 532 W. Pittsburgh Street, Greensburg, Westmoreland County, Pennsylvania 15601, and at all times material hereto, held itself out to the public as being able to provide competent, adequate and timely care to a pregnant woman and her fetus.

2

6)     At all times material to this cause of action, defendant EXCELA was acting by and through its duly authorized agents, servants, employees and ostensible agents who were acting within the course and scope of their employment, on the business of said defendant, and under its direct control and supervision, including but not limited to nurses whose involvement in plaintiff's and decedent's care is described herein.

7)     Defendant WESTMORELAND OBSTETRICS AND GYNECOLOGY, INC., hereinafter defendant "OB/GYN", is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania which maintains an office address at Medical Commons #1, 530 South Street, Suite G-20, Greensburg, Westmoreland County, Pennsylvania 15601, and at all times material hereto, held itself out to the public as being able to provide competent, adequate and timely medical care through obstetricians.

8)     At all times material to this cause of action, defendant "OB/GYN" was acting by and through its duly authorized agents, servants, employees, or ostensible agents, who were acting within the course and scope of their employment, on the business of said defendant, and under its direct control and supervision, including but not limited to defendant TRACY J. GEMMELL, M.D.

9)     Defendant TRACY J. GEMMELL, M.D., hereinafter defendant "GEMMELL", is an adult individual who maintains an office address for the practice of medicine at Athena Womens Care, 911 Ligonier Street, Suite 205, Latrobe, Westmoreland County, Pennsylvania

15650 and at all times herein referred to was a physician duly licensed for the practice of said profession in the Commonwealth of Pennsylvania; and at all times herein material hereto, defendant held herself out to the general public as duly licensed for the practice of said profession and ready, able and competent to care for the general public as an obstetrician; and in particular, held herself out to the plaintiff as having the requisite skill in obstetrics and as being capable of applying commensurate means for care normally provided by obstetricians.

10)     In August 2007, plaintiff KATIE CABRAL was pregnant and presented for prenatal care to defendant OB/GYN.  She had numerous exams at the office and in the Westmoreland Hospital including pre-natal ultrasounds.  She was examined and treated ante-partum during her pregnancy by various physician members of such practice group who were employed by defendant OB/GYN.

11)     During the aforesaid pregnancy on January 3, 2008, plaintiff KATIE CABRAL underwent a laparotomy with a right ovary excision due to a cyst.  She recovered well and her fetus was not adversely affected.

12)     As the pregnancy progressed, defendant OB/GYN established an estimated date of confinement of April 18, 2008.

13)     During the pregnancy, plaintiff KATIE CABRAL experienced vomiting and diarrhea and presented to the defendant WRH on February 6, 2008 during which admission the fetal heart rate established by monitoring was reassuring.

14)    On February 26, 2008, plaintiff CABRAL underwent an obstetrical ultrasound at defendant WRH.

15)    On April 16, 2008, at 39 weeks, 5 days gestation, plaintiff CABRAL underwent a prenatal exam by defendant OB/GYN.  At such time her blood pressure was 138/86 and there was plus 1 edema.  She was scheduled for induction of delivery on April 22, 2008 at defendant WRH.

16)    On April 22, 2008 at 5:20 A.M., plaintiff CABRAL was admitted to the labor and delivery unit of the hospital of defendant WRH.  The fetus, now plaintiff JACUB C. FOLEY, was assessed by external electronic fetal heart rate monitoring.  At 6:00 A.M. induction by Pitocin administration was started.

17)    At 6:45 A.M. regular mild contractions began and the cervix began to dilate.  An assessment by defendant GEMMELL at 6:45 A.M. diagnosed plaintiff CABRAL as having a full term intrauterine pregnancy with symptomatic preeclampsia.  Defendant GEMMELL performed an artificial rupture of membranes with clear fluid emanating as a result.  From the time of initiation of monitoring to the exam and rupture of membranes by defendant GEMMELL, the fetal heart rate was reassuring with moderate long term variability, accelerations and no decelerations.

18)     At 7:15 A.M. on said date, uterine contractions were noted to be every 2 to 4 minutes lasting 40 to 60 seconds.  Pitocin was increased at intervals as time progressed.  An epidural for anesthesia was ordered and established.  Contractions continued.

19)     Beginning 7:30 A.M., the monitoring indicated that long term variability was minimal at 3 to 5 beats per minute.  At 7:45 A.M., accelerations were absent and there were no decelerations.  Defendant GEMMELL was paged at 8:00 A.M., and again at 8:30 A.M.  At 8:45 A.M. accelerations were present for most of the time with moderate variability until 12 Noon with no decelerations.  Defendant GEMMELL ordered epidural anesthesia which was established at 9:00 A.M.  At 9:30 A.M. the cervix was dilated to 3 to 4 centimeters.

20)     At 11:30 A.M., preeclampsia symptoms were evident.  Defendant GEMMELL ordered magnesium sulfate to be administered.  At 12:15 monitoring revealed the fetal heart rate in a normal range with a minimal variability, no accelerations and mild variable decelerations with contractions every 5 minutes lasting 40 to 70 seconds.  Pitocin was increased to 14.  At 12:09 P.M., magnesium sulfate was administered beginning with a bolus followed by a maintenance does.

21)     Between 4:02 P.M. and 4:25 P.M. on said date, there were variable decelerations with contractions of the fetal heart rate with the decelerations below 60 beats for 30 seconds.  At 4:30 P.M. the Pitocin was increased to 20.  The last accelerations detected and noted were at 5:00 P.M.

22)     By 6:30 P.M. on said date, the fetal heart rate was noted to have minimal variability, no accelerations, and continued repetitive, first mild, then moderate variable decelerations.  The contractions were strong every 2 to 4 minutes and the cervix was fully dilated.  Soon thereafter, plaintiff was instructed to push.  At 7:00 P.M., oxygen at a rate of 6 liters was started.  At 7:35 P.M., defendant GEMMELL was at bedside.  At 8:45 P.M. there was a severe bradycardia.  Persistent moderate variable decelerations with minimal variability were noted and recorded through 9:00 P.M.  During this period there was fetal heart rate monitoring evaluated and recorded at intervals that were more than 5 minutes apart, and there was a loss of signal in the system on many occasions.  Ms. Cabral revealed exhaustion from pushing, but was encouraged to continue pushing.  At 8:55 P.M., defendant GEMMELL was at bedside.

23)     From 9:24 P.M. through 9:45 P.M., with no documented engagement of the fetal head and without any observation of crowning of the fetal head, defendant GEMMELL attempted a vacuum assisted delivery without success.  At 9:48 P.M. the Pitocin was increased to 24.  Since 8:00 P.M. the fetal heart rate baseline was decreasing.  Long term variability was moderate.  At 10:00 P.M., the fetal head crowned.  Defendant GEMMELL, who was at bedside, ordered the Pitocin to be increased to 26 which order was carried out.  At 10:41 P.M. the Pitocin was increased to 28 with the fetal heart rate variability was first absent, then minimal, between 10:35 P.M. and 10:52 P.M.  At 10:45 P.M. "V" shaped variable decelerations lasting 30 seconds were observed and noted.

24)     From 10:50 P.M. through 11:00 P.M. defendant GEMMELL again attempted a vacuum assisted delivery without success.  Thereafter, the persistent variable decelerations

continued with long term variability being absent.  From 8:00 P.M. to the 11:15 P.M. delivery, the fetal heart rate baseline had decreased from 150 to 121.

25)     At 11:16 P.M., JACUB FOLEY was delivered from the occiput posterior position severely depressed with Apgar scores recorded as 1, 4, 4, and 9 at 1, 5, 10 and 20 minutes respectively after birth.  Blood gases at 11:27 P.M. revealed significant metabolic acidosis with the following values: PH 7.187, PC02 42.9 and base deficit of 12.4.   He required vigorous resuscitation including ventilation first with bag mask, then intubation, cardiogenic drugs, and chest compressions.  His initial evaluation revealed a subgaleal hemorrhage.  He received boluses of saline to correct decreased perfusion and hypotension.

26)     On April 23, 2008, Jacub Foley was transferred to the Western Pennsylvania Hospital for neonatal care for neonatal depression, hypotension, prophylactic treatment for suspected sepsis, subgaleal hemorrhage and hyperbilirubinemia.  He was discharged on May 2, 2008.

27)     During the aforesaid labor and delivery process, minor plaintiff JACUB FOLEY suffered an acute brain injury from a hypoxic and ischemic insult which was manifested in various signs and test results including but not limited to non-reassuring fetal heart rates for a prolonged period, bradycardia and low Apgar scores, the need for resuscitation, respiratory and metabolic acidosis, encephalopathy, the absence of abnormalities shown on a CT scan a few hours after birth, with the exception of a small tentorial subdural hematoma and cephalohematoma, hypoxia and apnea, abnormal blood counts and chemistries, prolonged acid

base balance, hyperbilirubinemia, abnormalities on an MRI scan on April 28, 2008 after birth and an MRI scan on March 31, 2016 which reveal evidence of partial prolonged hypoxic-ischemic insult combined with an acute profound hypoxic-ischemic injury as well as evidence of embolic infarction in the perinatal period.

28)     The aforesaid physical injuries to the minor plaintiff's brain are the cause of and have resulted in cognitive function impairments including language and speech disorder, weakness in short-term auditory memory, a learning disability and disorder in executive functions, which will continue indefinitely and/or be permanent.

29)     As a further direct result of the aforesaid injuries, minor plaintiff JACUB FOLEY has and will suffer the following damages:

      a)     He has and will in the future suffer significant humiliation and embarrassment;

      b)     He will suffer a permanent impairment of his future earning capacity.

      c)     He has been and will be required to undergo various therapies.

      d)     He will suffer great inconvenience and anguish due to his limitations.

      e)     He will lose the ability to enjoy various pleasures of life.

      f)     He will incur monetary expenses for medical and therapeutic care, rehabilitation and modalities to assist his future needs.

30)     Plaintiffs believe and aver that the defendants were negligent and such negligence caused the injuries and damages described above.  Had defendants complied with the prevailing

standard of acceptable care, and otherwise met their respective duties, the injuries to minor plaintiff JACUB FOLEY would have been avoided, and he would have been born in a healthy state without significant morbidity.

## FIRST COUNT
## VICARIOUS LIABILITY

| JACUB C. FOLEY, a minor by KATIE A. CABRAL, his parent and natural guardian | VS. | WESTMORELAND REGIONAL HOSPITAL and EXCELA HEALTH doing business as Excela Health Westmoreland Hospital |
|---|---|---|

31)     The averments of paragraphs 1 through 30 inclusive of this complaint are incorporated herein by reference thereto as though the same were fully set forth herein.

32)     The injuries and damages above described were caused by and were the direct legal result of the negligence, improper treatment and/or failure to follow accepted practices by the defendants by and through its employees and ostensible agents in the following particulars:

a)     In the nursing attendants failing to assess, evaluate and document the contractions and fetal heart rate during the second stage of labor in a high risk mother in accordance with the prevailing acceptable standard of care, which required the same to be done every five (5) minutes on a consistent basis.

b)     In failing to adequately, timely and diligently monitor the fetal heart rate during labor in consideration of plaintiff mother's risk status and condition.

10

c)   In allowing frequent loss of signals in the monitoring system without adopting a different or alternative method of assessing fetal heart rates.

d)   In failing to timely and diligently use an internal monitor for the fetal heart rate.

e)   In increasing the rate of Pitocin in the presence of non-reassuring fetal heart rate recordings.

f)   In increasing the rate of Pitocin when the fetal heart rate variability was minimal.

g)   In knowing that persistent variable decelerations existed from prior to full dilation of the cervix through the time of delivery, over an approximate seven (7) hour period, without altering the use of Pitocin, or timely and diligently intervening to provide better maternal fetal oxygen exchange.

h)   By increasing the rate of Pitocin beyond the hospital protocol and the customary protocols used without a written order from any physician.

i)   By increasing the Pitocin improperly and injudiciously in a preeclampic patient receiving magnesium sulfate and during the second stage of labor.

j)   In failing to timely and diligently notify the attending physician or any other obstetrician regarding the condition of the fetus as indicated by all the parameters of the monitoring that was done and recorded, including but not limited to the lack of accelerations, the persistent variable decelerations, and the poor variability.

k)   In failing to report to the obstetrician the decrease in fetal heart rate baseline between 8:00 P.M. and the time of delivery.

l)    In failing to know and/or recognize that the fetal heart rate, as recorded, was non-reassuring and there was evidence of fetal distress.

m)    In failing to know and/or recognize that the progress of labor, length of labor, and condition of the fetus revealed by the monitoring required intervention by the obstetrician.

n)    In knowing and recognizing that the progress of labor, length of labor, and fetal heart rate indicated that the fetus was in jeopardy and/or required delivery, but in failing to take any steps to alert an obstetrician that intervention was necessary or should be considered.

o)    In failing to timely and diligently initiate the chain of command to effectuate physician attendance and intervention through the administration levels of the hospital system when the length of the second stage of labor with slow progress of descent continued with a high risk patient, and/or when the obstetrician was observed using the vacuum extractor indiscriminately for a prolonged period, and/or the nursing staff knew or should have known that a timely delivery was necessary.

p)    In failing to timely and diligently intervene in response to the non-reassuring fetal heart rate by timely and adequate administration of oxygen and timely and adequate position changes.

WHEREFORE, plaintiffs claim damages from defendant in a sum in excess of the jurisdictional threshold amount of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS exclusive of interest and costs, and request a trial by jury.

SECOND COUNT
DIRECT (CORPORATE) LIABILITY

| | | |
|---|---|---|
| JACUB FOLEY, a minor by KATIE A. CABRAL, his parent and natural guardian | VS. | WESTMORELAND REGIONAL HOSPITAL and EXCELA HEALTH doing business as Excela Health Westmoreland Hospital |

33)     The averments of paragraphs 1 through 30 inclusive of this complaint are incorporated herein by reference thereto as though the same were fully set forth herein.

34)     Defendants WRH and EXCELA in the operation of Westmoreland Regional Hospital undertook the role of providing comprehensive health care that included arranging and coordinating the total healthcare of its patients.  In addition, in carrying out the responsibilities, they exercised a duty to select, credential and retain only competent staff physicians and monitored the conduct of physicians and staff employees who practiced at the Westmoreland Regional Hospital to assure quality care.  Also, said defendants exercised a duty to adopt and enforce protocols to guide and direct the activities of physicians and other professional employees who attend and care for the patients.

35)     At the time of the events hereinabove set forth, defendants WRH and EXCELA had an independent non-delegable duty directly to plaintiffs to ensure the safety and well-being of Jacub Foley during the admission at Westmoreland Regional Hospital of plaintiffs on August 22, 2008 by using reasonable care to (a) assure the maintenance of safe and adequate facilities, (b) select and retain only competent physicians, (c) oversee all persons who practiced medicine at the hospital and (d) formulate, adopt and enforce adequate rules and policies to ensure quality patient care.  In

13

carrying out those duties, it was said defendants' obligation to observe, supervise and/or control a patient's treatment that was ordered or approved by physicians, and to apply and enforce its consultation and monitoring procedures.

36)     In particular, defendants WRH and EXCELA undertook, for consideration or gratuitously, to provide medical care to plaintiff KATIE A. CABRAL, then Katie A. Amaral, and her fetus JACUB FOLEY, which they should have recognized was necessary for the protection of both plaintiffs, who relied upon defendants providing such care within the scope of the prevailing standard of care.

37)     Defendant WRH and EXCELA knew or should have known through its nurses, physicians, supervisors, and/or administrators that plaintiffs required timely, diligent and adequate management and treatment for her high risk pregnancy which would involve maternal-fetal surveillance followed by the timely delivery of JACUB FOLEY before any hypoxic-ischemic insult injured him.

38)     Defendant WRH and EXCELA knew or should have known through its nurses, physicians, supervisors, and/or administrators that the management of care of plaintiffs required the attendance by an obstetrician and was either not being provided and carried out, or otherwise, not being managed competently and carefully, which placed JACUB FOLEY at risk and caused his injuries.

39)     Defendant WRH and EXCELA breached the aforementioned duties by negligent

14

conduct which caused the aforesaid injuries and damages in the following respects:

a)    In failing to have, maintain, and/or enforce policies and protocols to promote and ensure that a patient with a high risk pregnancy complicated by preeclampsia would receive reasonable care.

b)    In failing to have, maintain and/or enforce policies and protocols to promote and ensure that their patients would be attended by competent persons who could manage their condition, including patients with a high risk pregnancy complicated by preeclampsia, and when non-reassuring fetal heart rate monitoring indicated fetal distress.

c)    In failing to have, maintain and/or enforce protocols or policies for the management of their patients with a high risk pregnancy complicated by preeclampsia, and when non-reassuring fetal heart rate monitoring indicated fetal distress.

d)    In failing to have, maintain, and/or enforce policies or protocols to assign competent physicians and nurses to manage patients with a high risk pregnancy complicated by preeclampsia, and when non-reassuring fetal heart rate monitoring indicated fetal distress.

e)    In knowing and recognizing that plaintiff was suffering from symptomatic preeclampsia, which required the management of a maternal-fetal specialist, and/or competent obstetrician, and competent nurses, and in either failing to obtain and supply such consultation services or by notifying supervisory or administrative personnel and such personnel failing to timely and diligently respond.

f)  In knowing and recognizing that plaintiff was suffering from symptomatic fetal distress, which required the management of a maternal-fetal specialist, and/or competent obstetrician, and competent nurses, and in either failing to obtain and supply such consultation services or by notifying supervisory or administrative personnel and such personnel failing to timely and diligently respond.

g)  In the alternative, in failing to realize and know that the condition of Jacub Foley and his mother required timely management by a maternal-fetal specialist and/or a competent obstetrician, and competent nurses who would follow the prevailing standard of care.

h)  In failing to know or realize that the condition of Jacub Foley and his mother was continuing to place Jacub Foley at risk and needed proper management.

i)  In the alternative, in nurses and physicians knowing and realizing that Jacub Foley's condition was deteriorating and either failing to timely notify supervisory or administrative personnel and take steps to summon needed assistance or notifying supervisory or administrative personnel and such personnel failing to timely and diligently respond.

j)  In failing to have, maintain, use and enforce a protocol for contacting supervisors or administrators which is commonly known as the Chain of Command;

k)  In failing to have, maintain, use and enforce adequate policies and protocol to ensure quality care including policies and protocols with respect to fetal heart rate monitoring, intervention for fetal distress, physician attendance at

labor, the use of vacuum extraction operative delivery, the use of Pitocin, and the timely use of Cesarean section delivery.

WHEREFORE, plaintiffs claim damages from defendants in a sum in excess of the jurisdictional threshold amount of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS exclusive of interest and costs, and request a trial by jury.

## THIRD COUNT

| JACUB C. FOLEY, a minor by KATIE A. CABRAL, his parent and natural guardian | VS. | WESTMORELAND OBSTETRICS AND GYNECOLOGY, INC. and TRACY J. GEMMELL, M.D. |
|---|---|---|

40)     The averments of paragraphs 1 through 30 inclusive of this complaint are incorporated herein by reference thereto as though the same were fully set forth herein.

41)     The injuries and damages above described were caused by and were the direct legal result of the negligence, improper treatment and/or failure to follow accepted practices by defendant GEMMELL and by defendant OB/GYN by and through its employees and agents, including defendant GEMMELL, in the following particulars:

a)      In failing to timely and diligently obtain the status of the fetal heart rate monitoring, the station of the presenting anatomy and the position of the baby during the labor.

b)      In failing to timely obtain the status of fetal heart rate monitoring between 4:00 P.M. and the delivery which would have revealed a loss of variability, persistent variable decelerations, and episodes of bradycardia.

17

c)   In failing to recognize the signs of fetal distress and potential compromise occurring long before as well as after there was complete cervical dilation.

d)   In failing to recognize the signs of fetal distress and compromise.

e)   In failing to adequately and diligently attend the patient during labor.

f)   In failing to conduct adequate and timely vaginal examinations.

g)   In failing to diagnose fetal distress and compromise not only from the external monitoring, but when the monitoring was inadequate, in failing to use other methods including an internal monitor.

h)   In recognizing the probability of fetal distress and compromise, but permitting the labor to continue without appropriate intervention.

i)   In failing to timely and diligently recognize or diagnose labor dystocia which occurred with a failure of the fetus to descend despite strong, regular labor contractions.

j)   In failing to adequately respond and intervene to avoid fetal compromise and asphyxic and ischemic insult.

k)   In failing to order nursing interventions such as position changes and adequate oxygen administration to relieve fetal distress.

l)   In failing to timely and diligently conduct an emergent Cesarean section delivery before the station of the fetus was too low to attempt the same.

m)   In delaying the delivery of Jacub Foley despite the available signs of distress and compromise.

n)   In managing the labor in a manner that permitted fetal asphyxia and metabolic acidosis.

18

o)      In using Pitocin to induce labor when it was unnecessary.

p)      In appropriately using Pitocin and increasing the rate under all the circumstances including when there were repetitive variable decelerations and minimal variability in the fetal heart rate.

q)      In using Pitocin when contractions were regular, strong, and at close intervals, and there was change in the cervical dilation and persistent variable decelerations with minimal variability in a high risk patient with preeclampsia who was medicated with magnesium sulfate.

r)      In failing to conduct a timely Cesarean section delivery instead of waiting and attempting a vacuum extraction operative delivery.

s)      In attempting a vacuum extraction when the fetal head was in mid-pelvis and/or not engaged.

t)      In attempting the vacuum extractions with numerous pulls over a prolonged period.

u)      In recognizing that the fetus required delivery and using the vacuum extractor, but then abandoning further attempts for over an hour.

v)      In allowing the second stage of labor to become excessively prolonged with a non-reassuring fetal heart rate.

w)      In failing to deliver the fetus by Cesarean section even before the cervix was completely dilated due to the non-reassuring fetal heart rate status.

x)      In making numerous unsuccessful attempts to deliver the fetus with a vacuum extractor method.

y)      In failing to properly and diligently use the vacuum extraction method of delivery.

z)      In using traction with the vacuum extractor that pulled the head into the perineum.


WHEREFORE, plaintiffs claim damages from defendants in a sum in excess of the

jurisdiction amount of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS exclusive of

interest and costs, and request a trial by jury.


A JURY TRIAL IS DEMANDED

LAW OFFICES OF JOHN A. CAPUTO


BY _____

John A. Caputo
Attorney ID# 16370
jac@jcaputo.com

Elizabeth L. Jenkins
Attorney ID# 85694
ejenkins@jcaput.com

100 Ross Street
Pittsburgh, PA 15219
(412) 246-4775

<u>VERIFICATION</u>

I, KATIE A. CABRAL, have read the foregoing COMPLAINT.   The factual information therein which was provided by me to my attorney is true and correct to the best of my personal knowledge, information or belief.

Any other contents of the COMPLAINT, including additional factual information, legal theories or conclusions of law, have been prepared by my attorneys, who have signed the pleading, and are based upon their investigation and analysis of information available to them and the applicable law.

We make this statement subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

KATIE A. CABRAL

DATED:   May 31, 2017